```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
                                :
IN RE:                          :
                                : MEMORANDUM AND ORDER
    KEVIN THOMAS WATKINS        :
    A/K/A RONIN AMANO,          : Civil Action Nos.
                                : 05-CV-344 & 05-CV-790
                Debtor.         :
                                :
-------------------------------X
```

TRAGER, District Judge:

Bankruptcy debtor Kevin Thomas Watkins, also known as Ronin Amano ("Watkins" or "debtor"), appeals pro se an order of the United States Bankruptcy Court signed by Bankruptcy Judge Dennis E. Milton dated December 29, 2004 ("the Order"). The Order lifted an automatic stay pursuant to 11 U.S.C. § 362(d) permitting Watkins's landlords, Joseph and Charles Alpert, (the "Alperts") to enforce their rights in state court proceedings to evict Watkins from his current apartment. For the reasons stated below, the appeal is denied.

**Background**

Watkins is currently a tenant in apartment 2E of an apartment building located at 95 Eastern Parkway, Brooklyn, New York (the "premises") owned by the Alperts. Alpert v. Watkins, No. L&T 065414/03, slip op. at 2 (N.Y. Civ. Ct., Dec. 8 2003) (Silber, J.) ("Silber Decision"). On October 27, 1998, Watkins commenced an action in the United States District Court for the

Eastern District of New York against the Alperts and others,[1] entitled Watkins v. Ceasar, 98-CV-06597-JG ("1998 Action"), seeking a preliminary injunction to halt both rent collection proceedings in New York State Housing Court, and damages for violations of the warrant of habitability and various other New York State housing statutes.  See Watkins v. Ceasar, Docket Sheet entry no. 3.  Watkins also alleged harassment by the Alperts. Id., entry no. 16.  Then - District Judge Reena Raggi denied Watkins' request for a preliminary injunction and the denial was affirmed on appeal.  Id., entries nos. 16, 83.

In June 2002, the case was reassigned to Judge John Gleeson.[2]  Subsequent to the initial filing, Watkins amended his complaint to include additional claims, one of which was a claim of adverse possession of the premises, or, in the alternative, Watkins' apartment.[3]  See In re Thomas Watkins a/k/a Ronin Amano,

---

[1] The defendants included David Ceasar, Francis X. Daniel, Paul A. Roldan, Deputy Commissioner of New York State Division of Housing and Community Renewal ("NYSDHCR"), Joseph Lynch, Acting Commissioner of NYSDHCR, Abe Pultman, agent for the Alperts, A.P. Brooklyn Management, Elvis Morris, Strategic Management, Charles Alpert, Joseph Alpert and Independence Savings Bank.

[2] After being appointed to the United States Court of Appeals for the Second Circuit, Judge Raggi was replaced on the case by Judge Gleeson.

[3] Watkins claimed that the company that issued the deed to the Alperts in 1996, 95 Eastern Parkway Inc., had been dissolved in 1973 and, therefore, had no legal right to pass ownership to the Alperts.  See Debtor's Reply to Alpert's Relief Application at 2.

No. 1-04-13467-dem, slip op. at 2 (Bankr. E.D.N.Y. Dec. 29, 2004) ("Bankruptcy Decision").  On April 22, 2003, Judge Gleeson denied Watkins' motion for a preliminary injunction enjoining the Alperts from seeking his eviction.  See Order, 98-CV-6597, dated April 22, 2003 (Gleeson, J.).  On July 8, 2003, Judge Gleeson signed an order dismissing Watkins' adverse possession claim.[4]  See Order, 98-CV-6597, dated July 8, 2003 (Gleeson, J.).  Then, on August 14, 2003, Judge Gleeson vacated and removed the Notice of Pendency that had been placed on the premises.  See Order Vacating and Dismissing Notice of Pendency, 98-CV-6597, dated August 14, 2003 (Gleeson, J.).

In March 2003, the Alperts, represented by Horing, Welikson & Rosen, P.C. ("HWR"), had commenced a summary proceeding against Watkins in New York State Civil Court, Kings County, based on his failure to pay rent, entitled Alpert v. Watkins, No. L&T 065414/03 (N.Y. Civ. Ct. 2003).  Watkins moved to disqualify the Alperts' counsel based upon an alleged conflict because a former employee of HWR, Allan C. Rolle, had allegedly represented Watkins by helping him prepare his pro se answer during a previous non-payment proceeding brought by the former management company of the premises in 1998, entitled A.P. Management v. Watkins, L&T 98630/98 (N.Y. Civ. Ct., 1998).  Watkins testified

---

[4] Judge Gleeson also dismissed Watkins' RICO, intentional tort and False Claims Act causes of action.

3

that Rolle appeared in court on his behalf on December 7, 1998. See Further Affidavit in Support of Motion to Disqualify Counsel ¶ 5. Watkins also testified that Rolle began settlement negotiations with the property manager of the premises on Watkins' behalf, id. ¶ 8, and that Watkins consulted with Rolle in Rolle's office at HWR four times between December 1998 and January 1999. Id. ¶ 3. By a Decision and Order dated December 8, 2003, Judge Debra Silber denied the motion to disqualify Rolle. See Silber Decision at 7. On March 9, 2004 Judge Loren Baily-Schiffman issued a Decision and Order which directed that a Warrant of Eviction be issued "forthwith," and scheduled a hearing on the issue of the award of attorneys fees to the Alperts.[5] See Respondents' Brief at 2.

On March 11, 2004, before the Warrant of Eviction was executed, Watkins filed a voluntary petition for Chapter 7 bankruptcy protection. See Respondents' Brief at 2-3. Pursuant to 11 U.S.C. § 362(a), an automatic stay was issued at this time on all proceedings against the debtor, including the eviction proceedings. On May 3, 2004, the Alperts brought a motion by their counsel HWR pursuant to 11 U.S.C. § 362(d) to lift the automatic stay and allow them to move forward with the eviction proceedings. Id. In response, Watkins filed an application on

---

[5] Judge Baily-Schiffman was assigned to the case after Judge Silber recused herself following multiple requests by Watkins.

4

May 12, 2004 opposing lifting the stay and seeking the disqualification of HWR as counsel.  Id.  Judge Dennis Milton granted the Alperts' motion and denied Watkins'.  See Bankruptcy Decision at 12.

## Discussion

A district court reviews a bankruptcy court's findings of fact under the "clearly erroneous" standard and reviews conclusions of law de novo.  See In re Godt, 282 B.R. 577, 582 (E.D.N.Y. 2002) (citing In re AroChem Corp., 176 F.3d 610, 620 (2d Cir. 1999)).  Findings of fact may be considered clearly erroneous only if the reviewer is left with a "definite and firm conviction that a mistake has been committed."  Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).  As a bankruptcy court's decision to lift an automatic stay pursuant to 11 U.S.C. § 362(d) is discretionary, a District Court may only overturn the decision for abuse of discretion.  See In re Bogdanovich, No. 00 Civ. 2266, 2000 WL 1708163, at *4 (S.D.N.Y. Nov. 14, 2000) (citing In re Boodrow, 126 F.3d 43, 47 (2d Cir. 1997)).

### (1)

### Lifting the Automatic Stay

Although the filing of a bankruptcy petition under Chapter 7 automatically stays creditors from taking further action against a debtor, a bankruptcy court may grant relief from the stay on

5

the request of a "party in interest." 11 U.S.C. § 362(d). The relief granted may include "terminating, annulling, modifying or conditioning such stay[.]" Id.

The Alperts filed for relief under § 362(d)(1), which allows the Bankruptcy Court to lift a stay "for cause, including lack of adequate protection of an interest in property[.]"[6] Id. The Alperts contended that because Watkins failed to pay post-petition rent,[7] and apparently lacked the funds to do so in the future, there was inadequate protection for their interest in the premises, which constituted "cause" under § 362(d)(1) of the Bankruptcy Code.[8]

In finding that "cause" did indeed exist, Judge Milton correctly applied the factors set forth by the Second Circuit in In re Sonnax Industries, 907 F.2d 1280 (2d Cir. 1990). In Sonnax, the Second Circuit provided a non-exclusive list of factors that may be relevant in determining whether an automatic

---

[6] Although "adequate protection" is not defined, § 361 specifies various non-exhaustive ways by which adequate protection may be given. These methods include periodic cash payments equal to the loss in value of the property, an additional lien on other property or the "indubitable equivalent" of value of the interest in the property.

[7] At the time of the motion, the Alperts alleged that Watkins owed $915.49 in post-petition rent.

[8] Although the creditor bears the initial burden of production that cause to lift a stay exists, the ultimate burden belongs to the debtor. In re Touloumis, 170 B.R. 825, 828 (Bkrtcy. S.D.N.Y. 1999)

6

stay should be lifted to permit litigation to continue in another forum.  Factors considered by Judge Milton included: (i) whether relief would result in a resolution of the issues; (ii) whether a special tribunal with the necessary expertise has been established to hear the cause of action; (iii) judicial economy; (iv) whether relief would result in a partial or complete resolution of the proceeding; (v) the lack of interference with the bankruptcy case; (vi) whether litigation in another forum would prejudice the interests of other creditors; (vii) whether litigation is already pending; (viii) bad faith and (ix) the impact of the stay on the parties and the balance of the harm. Id. at 1286.  Furthermore, in deciding whether to lift a stay to allow a creditor to continue litigation in another forum, a bankruptcy court should consider the particular circumstances of the case and "ascertain what is just to the claimants, the debtor and the estate."  Touloumis, 170 B.R. at 828 (citing In re M.J. & K., 161 B.R. 586, 590 (Bkrtcy. S.D.N.Y. 1993)).

Judge Milton correctly held that lifting the stay would not interfere with the bankruptcy case and would not prejudice the rights of any other creditors.  See Bankruptcy Decision at 9.  He relied on a number of cases to support his holding, including Touloumis, which holds that a Chapter 7 landlord's desire to continue a pre-petition eviction proceeding usually has no discernable impact on the bankruptcy case.  See id. at 9 (citing

7

Touloumis, 170 B.R. at 828). Judge Milton also examined cases which held that failure of a tenant to make post-petition mortgage payments and comply with rental obligations can be cause to lift the automatic stay under § 362(d)(1). See id. (citing In re Musikahn Corp., 57 B.R. 942 (Bkrtcy. E.D.N.Y. 1986); In re Compass Van and Storage Corp., 61 B.R. 230 (Bkrtcy. E.D.N.Y. 1986); In re James, 198 B.R. 885, 890 (Bankr. W.D.Pa. 1996)). Judge Milton found that Watkins' failure to pay post-petition rent harmed the Alperts economically, because they incurred maintenance costs and paid real estate taxes on the property. See id. at 10. Therefore, according to Judge Milton, the Alperts lack adequate protection and demonstrated the existence of cause to lift the stay. Id.

The only Sonnax factor that could possibly weigh in Watkins' favor is the balance of the harm to both debtor and landlord because the hardship to Watkins is equal to or more than the burden on the Alperts. However, this factor is only one of many. It is apparent, therefore, that Judge Milton in no way abused his discretion by lifting the automatic stay because he applied the correct law and did not make any clearly erroneous factual findings.

**(2)**

**Government Tenancy**

Watkins claims that under 11 U.S.C.A. § 525(a), his rent-stabilized tenancy is a per se governmental tenancy. Watkins is currently a statutory tenant bound by the terms and conditions of the last lease in effect. See Pierre v. Williams, 106 Misc.2d 81, 83, 431 N.Y.S.2d 249, 250 (N.Y. Civ. Ct. 1980). Furthermore, in In re Yasin, 179 B.R. 43 (Bkrtcy. S.D.N.Y. 1995), the Bankruptcy Court for the Southern District held that a rent-stabilized lease is indeed a "lease." Id. at 49. Watkins attempts to distinguish his case from Yasin by pointing out that the debtor in Yasin had a lease whereas Watkins only has a month-to-month tenancy. Watkins postulates that because a lease has a set duration, and because his tenancy has no specific end date, he must not be living under a lease. See Appellant's Brief at 11. This, according to Watkins, means that his case is distinguishable from Yasin, and, therefore, he is living under a government tenancy.

There is simply no basis for Watkins' conclusion, as his current month-to-month tenancy is indeed lease-based. See Resolution Trust Corp. v. Diamond, 45 F.3d 665, 673 (2d Cir. 1995). Nor is there any basis for Watkins' interpretation of Yasin, which held merely that a rent-stabilized lease was still a lease. Watkins currently resides in a building owned not by a

9

government entity, but by a private owner.[9]  Therefore, Watkins is not a government housing tenant protected by anti-discrimination statutes.[10]

Watkins' argument that there is an outstanding issue of previous rental overcharges is of no concern here.  This issue is relevant to a "special tribunal," such as the state court, and lifting the automatic stay would allow such an issue to proceed in that forum.  If the Alperts do in fact owe Watkins damages for rental overcharges, lifting the stay will in no way interfere with any current or future proceedings by Watkins to recover.  Therefore, there is no reason to prevent the Alperts from seeking adequate protection for their property.[11]

---

[9] Watkins' argument that a post-petition eviction would amount to an unconstitutional governmental taking is similarly meritless.

[10] Watkins' theory that the Alperts' motion is an attempt to extort payment for the discharged pre-petition debt is similarly unfounded.  The Alperts are making no claim to this debt and do not even cite it as supplemental evidence of the lack of adequate protection.

[11] Watkins cites In re Stoltz, 197 F.3d 625 (2d Cir. 1999), in support of his argument that a "bankruptcy court must not extinguish a right if the debtor still has available avenues to restore it."  Appellant's Brief at 12.  This interpretation does not hold up under scrutiny because Judge Milton's decision does not take away any of Watkins' rights, but merely allows the Alperts' case to proceed in state court.

## Disqualification of Counsel

As he did in state court and in the bankruptcy court, Watkins once again argues that HWR, the Alperts' attorneys, should be disqualified because of the alleged conflict. In the state court case against Watkins, Judge Silber found that there was no conflict because Rolle had not appeared on Watkins' behalf by filing a Notice of Appearance and had not argued motions on his behalf. However, Judge Silber did find that Rolle was Watkins' attorney for a brief time in December 1998 and January 1999 while Rolle was an attorney for HWR.[12] Judge Silber held that this representation did not bar HWR from representing the Alperts in the 2003 Action because no conflict existed since Rolle was no longer with HRW and the representation was extremely limited.

Watkins argues that Judge Milton incorrectly found that Judge Silber's determination collaterally estopped subsequent courts from disqualifying HWR. Watkins claims that Judge Silber's decision was limited and narrowly tailored to the issues before her. Watkins further argues that collateral estoppel should not be applied because doing so would further injustice. The issue of collateral estoppel is a hybrid question of law and

---

[12] Rolle was subsequently disbarred for unrelated ethical violations and has not worked at HWR since approximately 2000.

fact, and because factual issues predominate in the case at bar, Judge Milton's decision will be reviewed for abuse of discretion.

"A question, material and relevant to the resolution of the legal issue involved in one action, may not be raised again in another action once the party against whom the estoppel is sought has been afforded a full and fair opportunity to contest the decision." FMA/Construction Management Corp. v. Yaabetz, 158 A.D.2d 664, 665, 552 N.Y.S.2d 41, 42 (2d Dep't 1990) (citing Allied Chem v. Niagara Mohawk Power Cor., 72 N.Y.2d 271, 276, 532 N.Y.S.2d 230, 232 (1988)). Whether or not Judge Silber foresaw her decision being used in subsequent proceedings, there is no reason to ignore her determination that there existed only a limited relationship between Watkins and HWR. Contrary to Watkins' claims, Judge Silber's decision on this issue was in no way restrited. Moreover, Watkins had a full opportunity to litigate the disqualification issue in the state court. Finally, there are no interests of justice that would prevent application of collateral estoppel.

Judge Milton did not make any clearly erroneous factual determinations with regard to the potential conflict of interest. His finding that there was no substantial relationship between Watkins and HWR that would warrant disqualification was based on facts fully supported by the record below. Judge Milton's determination that Rolle met with Watkins on an informal basis

for a limited number of meetings and that the facts before the bankruptcy court were not related to the facts which Watkins and Rolle would have discussed, were perfectly reasonable in light of the evidence presented. It is clear that Judge Milton in no way abused his discretion by applying collateral estoppel.

Despite the fact that Watkins' disqualification claim was barred, Judge Milton, nonetheless, addressed the merits of the disqualification motion and determined that Watkins did not satisfy his burden to have HWR disqualified. Because courts highly value a party's right to choose his own counsel, a moving party must meet a "high standard of proof" before the court will disqualify a lawyer. Bennett Silvershein Assocs. v. Furman, 776 F.Supp. 800, 802 (S.D.N.Y. 1991). In order to convince the court of a significant risk of trial taint, and, therefore, have an opponent's counsel disqualified, see Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748-49 (2d Cir. 1981), a movant must establish that the matters involved in the current and previous representations are substantially related. United States Football League v. National Football League, 605 F.Supp. 1448, 1459 (S.D.N.Y. 1985). Matters are considered substantially related when "[t]he relationship between issues in the prior and present cases is 'patently clear'" or the issues involved are "identical" or "essentially the same." Government of India v. Cook Industries, Inc., 569 F.2d 737, 739-40 (2d Cir. 1978).

13

Moreover, to establish disqualification of an opposing party's attorney based on prior attorney-client relationship, the party seeking disqualification must show a reasonable probability that confidential information will be disclosed during the course of litigation.  See Cremers v. Brennan, 196 Misc.2d 262, 263-64, 764 N.Y.S.2d 326, 328 (N.Y. Civ. Ct. 2003).  Additionally, where attorneys who handled the prior representation have left the firm, the presumption of disqualification may be rebutted by facts establishing that the firm's remaining attorneys possess no confidences or secrets of the former client.  See St. Barnabas Hosp. v. New York City Health and Hospitals Corp., 7 A.D.3d 83, 90, 775 N.Y.S.2d 9, 14-15(1st Dept. 2004).[13]

The prior litigation with which Rolle assisted Watkins bears no significant relation to the bankruptcy court proceeding.[14] Watkins has produced no copies of any communications between himself and Rolle, nor has he satisfactorily described any, that are relevant to the case at bar.  Further, Neil Welikson, an

---

[13] Watkins claims, as further evidence that there may indeed be a conflict, that Judge Silber advised that it may be better to substitute counsel.  Judge Silber actually suggested that it might be more "expeditious" to substitute counsel based on Watkins' strong feelings of mistrust toward HWR.  It appears that Judge Silber correctly predicted that additional time and resources would be wasted by the courts and both parties in debating this issue.

[14] Not only is Rolle no longer with the firm, his prior meetings with Watkins, as described by both appellant and appellee, were limited and informal.

14

attorney with HWR, stated that his staff made a diligent search of HWR's records, and that there were no records of any file being opened concerning the representation of Watkins, no retainer agreement with Watkins and no record of the firm receiving any money from Watkins. Any legal arguments that Watkins might have shared with Rolle to justify his failure to pay rent have nothing to do with the decision to lift the automatic stay based on Watkins' failure to pay post-petition rent. These arguments are better left to the state court in enforcement proceedings and have no bearing here.

## Conclusion

Accordingly, Watkins' appeal of Judge Milton's Order is denied. The Clerk of the Court is directed to close the case.

Dated:  Brooklyn, New York
        August 23, 2005

SO ORDERED:

_____/s/_____
David G. Trager
United States District Judge